**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DOMINICK'S FINER FOODS, INC., Respondent.**

No. 15681.

United States Court of Appeals Seventh Circuit.

Nov. 2, 1966.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Burton L. Raimi, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Nancy M. Sherman, Atty., N. L. R. B., for petitioner.

Sidney M. Libit, Libit, Lindauer & Henry, Harry H. Henry, Chicago, Ill., for Dominick's Finer Foods, Inc., respondent.

Before HASTINGS, Chief Judge, DUFFY, Senior Circuit Judge, and SCHNACKENBERG, Circuit Judge.

DUFFY, Senior Circuit Judge.

The National Labor Relations Board has petitioned for the enforcement of its order issued December 15, 1965, and reported at 156 N.L.R.B. No. 14.

The Board found that respondent violated Sections 8(a) (1) and (3) of the National Labor Relations Act as amended, 29 U.S.C.A. §§ 158(a) (1) and (3), by discharging Helen T. Avonts, and required, among other things, that Helen T. Avonts be reinstated to her former position, or one substantially equivalent thereto, and be made whole for any loss of pay she may have suffered.

Early in 1965, respondent operated seven stores in the Chicago area. In March and April 1965, it acquired three additional stores by purchasing the inventory and leasing the premises from E. J. Korvette, Inc. One of these three stores was located in Oak Lawn Illinois, and was taken over by respondent on March 15, 1965.

The employees of all of respondent's stores were fully unionized. Respondent had maintained harmonious contractual relations with various local unions from different international unions without incident for many years. Respondent never had been charged with any unfair labor practice. No evidence was introduced which would indicate any union animus by respondent.

Helen T. Avonts, the charging party, was one of the approximately fifty employees of Korvette who were hired by respondent. She had acted as a checker for Korvette. She had been a steward under the Korvette union contract which provided for stewards.

The new contract which respondent had with the union relating to former employees of Korvette, made no provision for stewards, nor did any previous contract between respondent and various retail clerk unions have any such provision.

The new collective bargaining agreement which was entered into prior to respondent taking over the Korvette food stores provided in part that "During the first sixty (60) days of employment a new employee shall be on a trial basis and may be discharged at the discretion of the Company."

Henry Hentz was personnel director of respondent with supervision over all of their stores. Prior to the opening of the new store on March 15, he spoke to all of the former Korvette employees in groups of four or five at which time he advised that Dominick's would be their new employer and that all employees were being hired on a sixty-day trial basis. The employees were advised that they were starting as new employees.

Mr. Hentz informed Mrs. Avonts that under the terms of the new union contract she would not serve as steward in the manner in which she had done in the past, and if she wanted to be a union official, she would be doing it outside the Company.

On the morning of March 15, the day when respondent took over the Oak Lawn store, the cashiers attended an indoctrination meeting conducted by Hentz. One of the purposes of the meeting was to explain respondent's personnel practices and to tell what was expected of the cashiers. Among other things, they were told that since the cashiers were the only employees who had direct contact with the customers, it was essential that they smile and speak to the customers and have a neat personal appearance. All were reminded that they had been hired subject to the sixty-day trial period. Avonts did not attend the first part of the meeting as she remained at her cashier's register to check out customers already in the store. About half-way through the meeting, another employee was sent to relieve her so that she could attend the meeting. She did so. At the conclusion of the meeting all of the employees except Avonts were excused. Hentz explained to her what had transpired at the meeting prior to her arrival.

Two or three days later, Mrs. Avonts spoke to Hentz about two of her co-employees, stating that the salary of one was too low and the salary of the other was too high. Mr. Hentz checked into the matter, increased the salary of the low-paid employee and allowed the rate of the higher paid employee to remain.

On March 23, 1965, eight days after the opening of the Oak Lawn store, Philip Caponi, the store manager, discharged Helen Avonts. He testified he did so because Mrs. Avonts had a loud voice, used profanity and was offensive to her co-workers, and also because her general appearance and demeanor did not meet Dominick's standards for a cashier. Mr. Caponi said that to spare Mrs. Avonts' feelings, he told her she was being discharged for economic reasons. At that time, Caponi did not know that Mrs. Avonts had been a steward when Korvette had operated the store, and was unaware of the fact that Mrs. Avonts had spoken to Hentz regarding wage rates of certain employees.

The testimony discloses that in the Dominick system, the manager of each store has complete authority to discharge an employee. Several employees, other than Avonts, were discharged during the sixty-day trial period.

Hentz was not aware of Mrs. Avonts' discharge until a union official called him on the telephone to ask why she had been discharged.

Testimony from three fellow employee witnesses clearly established that Avonts had a loud, raucous voice and that she was in the habit of using "toilet talk." When one was asked if Avonts used foul language on the floor she answered, "Well, it was second nature with Helen."

Witnesses described how her fellow employees sought to avoid going to lunch

784

with Avonts because of her loud talk, often referring to body functions of herself and her husband, all of which was embarrassing to them. Another witness testified she was less than careful about her appearance.

Thus, there was strong evidence to corroborate store manager Caponi that from his observation over a period of seven days he found Avonts to be loud, rude to customers and harsh with employees.

The Board emphasized that the store manager had not warned Avonts about her objectionable conduct. Certainly this is an element to which weight might be given in an ordinary discharge case. But here, we are not faced with the ordinary employer-employee relationship. This was a case where a rapidly expanding employer was taking over a large number of employees at one time. The union contract imposed a time limit. It was recognized by the union and all parties that there would be no time for detailed retraining. There would be very little time to give notices and additional trial employment time to improve an employee's performance of duties. This was a much different situation than where an employer had had many months' opportunity to observe and give warning notices.

In Portable Electric Tools, Inc. v. N.L.R.B., 7 Cir. (1962), 309 F.2d 423, we considered a situation in many respects similar to the case at bar. We there said, pages 426–427, "The burden, however, is on the Board to show affirmatively by substantial evidence that the discharge was discriminatory and motivated by Mrs. Ballard's alleged union activities." See also Indiana Metal Products Corp. v. N.L.R.B., 7 Cir. (1953), 202 F.2d 613.

In the case at bar, the Board has not met its burden of proof.

The petition of the Board for enforcement of its order of December 15, 1965, 156 N.L.R.B. No. 14, is

Denied