BOARD OF SUPERVISORS, CARROLL
COUNTY, Iowa, Appellee,

v.

CHICAGO AND NORTH WESTERN
TRANSPORTATION COMPANY,
Appellant.

No. 2–58907.

Supreme Court of Iowa.

Nov. 23, 1977.

Frank W. Davis, Jr. and T. Scott Bannister, of Gamble, Riepe, Burt, Webster & Fletcher, Des Moines, for appellant.

William G. Polking, Carroll, for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, HARRIS and McCORMICK, JJ.

RAWLINGS, Justice.

By mandamus action plaintiff county seeks to compel repair and maintenance by defendant railway company of a bridge previously declared unnecessary by Iowa Commerce Commission. Defendant appeals from trial court adjudication for plaintiff. We reverse.

The Town of Arcadia lies just north of Highway 30 in Carroll County. It is connected with Highway 30, the main east-west county thoroughfare, by Highway 285. Parallel to and about 100 yards north of Highway 30 are two sets of Chicago and North Western Transportation Company (C & NW) railroad tracks. Highway 285 crosses them at grade level, the crossing being guarded by electronic gates and signals.

Approximately a half mile east of that crossing is the center of controversy, Bridge # 816. It spans the tracks and, in a practical if not legal sense, is part of graveled County Road M–68. M–68 runs north from Highway 30, spans the bridge, then turns west and runs parallel to the tracks and Highway 30 until it intersects with Highway 285 just north of the aforesaid grade crossing.

Additionally, an unnumbered gravel road runs straight east from Arcadia for about one and a half miles, turns south, goes under railroad Bridge # 812½, and intersects with Highway 30. There are also other more indirect access routes from Arcadia to Highway 30 and vice versa.

The foregoing factual backdrop is graphically portrayed by this diagram:

In April 1973, C & NW inspected 816, found the overpass unsafe, closed same to vehicular traffic, and thereafter refused to repair or reopen it. Thereupon plaintiff, Carroll County Board of Supervisors (Carroll County), applied to Iowa Commerce Commission (ICC) for a determination as to legal responsibility for the repair and maintenance of 816. See Sections 478.21–478.23, The Code 1973.

By its January 29, 1974, post-hearing order, ICC determined 816 was unnecessary due to existence of other routes between Arcadia and Highway 30. In so holding the Commission stated:

"Although we are not requiring the bridge to be maintained and repaired, this Order does not require the bridge to be removed. If Carroll County desires to make the bridge operable, it may do so at its own expense. * * *
" * * *

"The Commission orders:
"1. * * *
"2. The Carroll County Board of Supervisors shall within 30 days of this Order file written notice with the Iowa State Commerce Commission and the C & NW if it intends to repair and maintain Bridge # 816 or whether it desires such bridge to be removed.

"3. If Carroll County, Iowa, should decide Bridge # 816, is no longer desired then the railroad will retire and remove this bridge within 180 days of such notice.

"4. All future maintenance and repair cost of Bridge # 816, if any, shall be borne by the Carroll County Board of Supervisors."

No direct review of the ICC decision was sought. Rather, Carroll County filed this timely notice of election:

"COMES NOW the Carroll County Board of Supervisors and hereby gives notice to Iowa State Commerce Commission and the Chicago & North Western Transportation Company of its intention to maintain Bridge # 816 located in Carroll County, Iowa. This Notice is pursuant to the Commission Order dated January 29, 1974."

Nevertheless, Carroll County later commenced the present action against C & NW for mandamus and declaratory judgment, essentially alleging C & NW has an obligation under Iowa law to maintain the bridge.

As an affirmative defense, C & NW contends Carroll County is precluded from relitigating what had already been adjudicated by ICC. In passing upon C & NW's attendant motion to adjudicate law points, trial court held to the contrary. This ruling is the focal point of C & NW's appeal.

■ I. We are satisfied the branch of res judicata now referred to as claim preclusion is clearly applicable to this case and operates to completely bar Carroll County's district court action.

■ It is initially understood that res judicata principles are applicable to an administrative decision where, as in this case, the performing officer or body is acting in a quasi-judicial capacity. See *Maquoketa Community School District v. George,* 193 N.W.2d 519, 520–521 (Iowa 1972), and citations. See also 2 Am.Jur.2d, Administrative Law, § 497; 73 C.J.S. Public Administrative Bodies and Procedure § 147; Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 869 (1952).

Noticeably, the county does not contend it was prohibited from fully presenting its contention before ICC that C & NW had the legal duty to maintain 816.

Therefore, the administrative adjudication, like a civil court judgment, was conclusive because the proceedings afforded " 'full legal opportunity for an investigation and determination of the merits of the suit.' " *Stucker v. County of Muscatine,* 249 Iowa 485, 495, 87 N.W.2d 452, 459 (1958). See also *Third Missionary Baptist Ch. of Davenport v. Garrett,* 158 N.W.2d 771, 774–775 (Iowa 1968).

■ II. Admittedly, Chapter 478, The Code 1973, made no provision for direct appeal to district court from an administrative adjudication. But this does not mean Carroll County had no means by which to seek a remedy if dissatisfied with the administrative determination.

In the first place the county could have applied for a corrective reopening of the case under § 1.12, Commerce Commission's Rules of Practice, 1973 Departmental Rules. See also Section 17A.1, The Code 1977.

Next, a review of ICC's action was available through certiorari. Iowa R.Civ.P. 306. See also *Cedar Rapids Steel Transp., Inc. v. Iowa State Commerce Com'n,* 160 N.W.2d 825, 830–831 (Iowa 1968), cert. den., 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969); cf. *Carstensen v. Bd. of Trustees, etc.,* 253 N.W.2d 560, 561–562 (Iowa 1977); *Erb v. Iowa State Board of Public Instruction,* 216 N.W.2d 339, 342 (Iowa 1974); *Appanoose County Association v. Tax Commission,* 261 Iowa 1191, 1200, 158 N.W.2d 176, 181–182 (Iowa 1968).

■ Despite the fact Carroll County claims grievous harm resulted from the commission ruling, it took none of the aforesaid curative steps. On the contrary, as prescribed by ICC's adjudication, the county specifically elected to repair the bridge. In brief, Carroll County thereby ratified the agency's decision and waived its right to controvert same by appeal or otherwise. Cf. *Millsap v. Cedar Rapids Civil Service Com'n,* 249 N.W.2d 679, 683 (Iowa 1977); *City of Cedar Rapids v. Cox,* 250 Iowa 457, 467, 93 N.W.2d 216, 222 (1958),

appeal dismissed, 359 U.S. 498, 79 S.Ct. 1118, 3 L.Ed.2d 976 (1959). Thus the ICC adjudication stood as a final judgment on the merits of the controversy presented.

■ III. Even so, Carroll County seeks to avoid the effects of res judicata by characterizing its present action as one based on an issue not reached by ICC: statutory responsibility for maintenance and repair of Bridge # 816.

Carroll County's interpretation of ICC's ruling is manifestly inaccurate. In accordance with express language in §§ 477.2 and 478.23, ICC determined 816 was unnecessary, therefore it need not be maintained by either the county or the railroad.

All that ICC declined to adjudicate was an alleged conflict in certain relevant statutes, a discussion thereof not being here necessary. In ICC's view it would be called upon to resolve such conflict only if the bridge or crossing had been found to be necessary. We are not prepared to dispute that thesis.

Moreover, Carroll County's characterization of its present action is far too restrictive because the same claim or cause of action is involved in both proceedings. See generally 65 Harv.L.Rev. at 824–831; 1B Moore's Federal Practice, ¶ 0.410[1], at 1154–1158 (2d ed. 1974).

At the outset, similar evidence was introduced by Carroll County in both proceedings, which arose from the same transaction and involved identical parties. See *B & B Asphalt Co. v. T. S. McShane Co.*, 242 N.W.2d 279, 287 (Iowa 1976), and citations.

Next, the same alleged wrong formed the basis for both proceedings: C & NW closed the bridge and refused to repair it. Cf. *Stucker v. County of Muscatine,* 249 Iowa at 493–494, 87 N.W.2d at 457. See also *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 321, 47 S.Ct. 600, 602, 71 L.Ed. 1069 (1927); *Towle v. Boeing Airplane Company,* 364 F.2d 590, 592 (9th Cir. 1966).

■ Where, as here, the cause of action is the same in both proceedings judgment in the first precludes relitigation of any aspect thereof in the second. In other words the "claim", and all attendant arguments and theories, are put to rest. See *B & B Asphalt,* 242 N.W.2d at 285–287; *Jordan v. Stuart Creamery, Inc.,* 258 Iowa 1, 5, 137 N.W.2d 259, 261 (1965); *Stucker,* 249 Iowa at 491, 87 N.W.2d at 456.

All this leads to the inescapable conclusion that, under claim preclusion, ICC's ruling served as a complete bar to Carroll County's civil court action.

In summary, the claim litigated in Carroll County's independent civil action was the same as that presented to ICC for adjudication. When the county suffered an adverse ruling by the agency and sought no review thereof, but rather affirmatively ratified the decision, it became a final adjudication on the merits of the claim presented. Carroll County is accordingly precluded from seeking another, more favorable judgment on the same claim in district court.

Trial court erred in entering (1) an order adverse to C & NW on its motion for adjudication of law points, and (2) a decree commanding issuance of the writ of mandamus sought by Carroll County.

This case must therefore be reversed and remanded with instructions that an order and decree respectively be entered consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.