Stuart HALL, Appellant,

v.

BACKMAN SHEET METAL and Iowa Contractors Workers' Compensation Group, Appellees.

No. 90–1010.

Court of Appeals of Iowa.

April 2, 1991.

Arthur C. Hedberg, Jr. of Hedberg, Ward, Owens & Vonderhaar, Des Moines, for appellant.

Ann M. Ver Heul and John A. Templer, Jr. of Shearer, Templer & Pingel, P.C., West Des Moines, for appellees.

Heard by OXBERGER, C.J., and SCHLEGEL and HABHAB, JJ.

SCHLEGEL, Judge.

Claimant Stuart Hall appeals industrial commissioner and district court rulings finding that he failed to show a change of condition necessary to reopen an award for further healing period benefits. The commissioner reversed a deputy industrial commissioner decision finding Hall had proven his change of condition. The sole issue for our review is this: When a claimant reaches a plateau in medical improvement, at which time a final industrial commissioner decision fixes a permanent partial disability rating and determines further medical treatment is necessary and causally related to the original injury, must the claimant, in a subsequent review-reopening proceeding, show further change of condition to recover healing period benefits for a period of "conservative" medical treatment beginning on the date on which further treatment is found necessary and ending when surgery is performed? For several reasons outlined below, we answer the question in the negative and find that the claimant was entitled to healing period benefits. Consequently, we reverse the decisions of the industrial commissioner and the district court, and we remand the claim to the industrial commissioner.

I. Claimant Stuart Hall was employed by Backman Sheet Metal. He performed all aspects of sheet metal construction, including cutting, welding, and installing. His work required substantial lifting and use of both hands. Hall developed carpal tunnel compression in his right hand during the course of employment. The date of injury was November 5, 1981, and Hall was about thirty-seven years of age. Hall suffered numbness, loss of sensation, and inability to grip. Dr. Arnis B. Grundberg performed decompression surgery on Hall's hand in January 1982. It appears from the record that benefits were paid under an agreement among the parties. *See* Iowa Code § 86.13 (1981).

In mid–1982 Dr. Grundberg indicated that Hall could perform limited lifting and could return to work. The numbness and loss of sensation were alleviated, but Hall's limited grip persisted. Because he needed full capacity for lifting and climbing, the employer could not put Hall to work. By the end of 1982 Dr. Grundberg determined that Hall could return to full duty, but the employer still believed Hall could not work safely because of his incomplete fist. On March 22, 1983, Dr. Grundberg determined that Hall's permanent partial disability was ten percent of his right hand.

In mid–1983 Hall consulted Dr. A. Ivan Pakiam. Hall had developed neuroma—encasement of local nerves—in his scar tissue and endema—post-operative stiffening and contraction—in his hand. This left him with a loss of grip and pinch and with recurring pain. Hall sought further medical benefits, *see* Iowa Code § 85.27 (1983), in a review-reopening proceeding, *see* Iowa Code § 86.14 (1983).

A deputy industrial commissioner filed a decision on February 25, 1985, finding that the disability was causally related to the November 5, 1981, injury and that it was an occupational disease. In her findings of fact, the deputy commissioner stated that Hall had reached his maximum level of medical improvement without further medical treatment on March 22, 1983. In analyzing the question of benefit entitlement, the deputy commissioner stated:

> The question of healing period benefits remains unresolved. Claimant has never returned to work. It is clear, claimant was unable to return to work on account

of his work-related hand condition. Therefore, the various medical work releases in evidence are not helpful in deciding this issue. Dr. Grundberg assigned claimant a permanent partial impairment rating March 22, 1983. Claimant's maximum level of medical improvement without further treatment is found to have been reached at that point. Based on Dr. Pakiam's assessment, the deputy commissioner determined that Hall was entitled to permanent partial disability benefits equal to thirty-two percent of his right hand, rather than ten percent as assigned by Dr. Grundberg. The deputy commissioner concluded that Hall was entitled to further medical treatment, including excision of the scar tissue and resuture. No appeal or further review of these rulings was taken, and defendants paid the permanent partial disability benefits in a lump sum.

From February 25, 1985 (the date of the review-reopening decision), until July 16, 1985 (the date of the second surgery), Hall continued to be off work. During this same time period, Dr. Pakiam prescribed a "conservative" course of treatment. This treatment included transcutaneous electrical nerve stimulation (a "TENS unit") and no return to work. This treatment proved unsatisfactory.

On July 16, 1985, Dr. Pakiam performed a second ulnar nerve decompression surgery on Hall's hand and removed scar tissue. The parties stipulated that the healing period after the second surgery was as Dr. Pakiam had prescribed. Hall received healing period benefits after the second surgery, and these benefits are not in dispute. In September 1987 Dr. Pakiam determined that the permanent partial disability to Hall's hand was twenty percent.

The defendants refused to pay any healing period benefits to Hall for the period February 25 through July 15, during which he was following the conservative treatment prescribed. Hall filed a second petition for review-reopening, seeking healing period benefits for that period.

Taking official notice of the previous proceedings, a May 25, 1988, deputy industrial commissioner's decision held that Hall was entitled to healing period benefits for that period. In the same proceeding, however, the deputy commissioner considered, over claimant's objections, the issue of whether the permanent partial disability rating should be changed. The deputy commissioner concluded that the permanent partial disability rating should be reduced from thirty-two to twenty percent. Based upon these conclusions, the deputy commissioner determined that the defendants had overpaid permanent partial disability benefits, that the overpayment was approximately the same as healing benefits owed, and that Hall could not recover any further award. Both parties appealed to the industrial commissioner.

The industrial commissioner determined that the dispositive issue was whether Hall proved a change of condition with respect to his entitlement to additional healing period benefits. The commissioner noted that the deputy commissioner in the 1985 review-reopening decision had found that Hall had reached his maximum level of medical improvement (*i.e.*, the end of his original healing period) on March 22, 1983. Further, the commissioner found no evidence showing a physical change of condition not anticipated at the time of the 1985 review-reopening decision. The commissioner concluded that Hall had failed to carry the burden necessary to reopen the award for additional payments and reversed the deputy commissioner's decision in the 1988 review-reopening proceeding. On Hall's petition for judicial review, the district court agreed with the commissioner and affirmed in all respects.

II. Our scope of review is limited to correction of errors of law. *Jackson County Pub. Hosp. v. PERB*, 280 N.W.2d 426, 429 (Iowa 1979). We are bound by the commissioner's findings of fact if they are supported by substantial evidence in the record. Iowa Code § 17A.19(8)(f); *see Hawk v. Jim Hawk Chevrolet–Buick, Inc.*, 282 N.W.2d 84, 85 (Iowa 1979). The facts, however, are not disputed, and the only issue before us is one of law. The industrial commissioner's determinations of law

are entitled to careful consideration, but we are not bound by them. *Hoenig v. Mason & Hanger, Inc.,* 162 N.W.2d 188, 199 (Iowa 1968); *Thomas v. William Knudson & Son, Inc.,* 349 N.W.2d 124, 125 (Iowa App. 1984).

"The primary purpose of the workers' compensation statute is to benefit the worker and his or her dependents, insofar as statutory requirements permit." *McSpadden v. Big Ben Coal Co.,* 288 N.W.2d 181, 188 (Iowa 1980) (citations omitted). The statute should be interpreted liberally to that end. *See Hoenig,* 162 N.W.2d at 199.

■ III. The first question we must answer is whether the claimant was required to show a change of condition in order to recover healing period benefits for the period in question. We conclude that no such showing was necessary. Consequently, the district court and the commissioner erred in finding that Hall had made no such showing and concluding from this that he must be precluded from claiming further healing period benefits.

A. The starting point for our analysis has to be the inception of claim. As we pointed out above, the record shows that benefits were paid under an agreement among the parties. *See* Iowa Code § 86.13 (1981). As applied in the 1985 decision, the Code provides that such agreements

> may be reviewed upon commencement of reopening proceedings by the employer or the employee within three years from the date of the last payment of weekly benefits.... [T]he commissioner may at any time upon proper application make a determination and appropriate order concerning the entitlement of an employee to benefits provided for in section 85.27.

Iowa Code § 85.26(2) (1985). It was under the authority of section 85.26(2) that the deputy in the 1985 review-reopening proceeding fixed Hall's right to further medical treatment. That proceeding did not, however, fix any right to healing period benefits as indicated by the deputy commissioner's statement that "[t]he question of healing period benefits remains unresolved."

Defendants correctly point out that this 1985 decision is res judicata. *Stice v. Consolidated Indiana Coal Co.,* 228 Iowa 1031, 1035, 291 N.W. 452, 454 (1940). Under 1935 Iowa Code section 1457 (predecessor of section 85.26(2)), the *Stice* court held that the claimant could not repeatedly reopen the same award absent a change of condition. *Id.* at 1038, 291 N.W. at 456. In *Stice,* unlike here, the claimant actually sought readjudication of and additional compensation for the same condition. Thus, had Hall been denied further medical treatment benefits and had he attempted to relitigate the final decision before the industrial commissioner, the decision would be res judicata and the industrial commissioner would be without jurisdiction to modify it absent a change of condition. *Id.*

In the present case, the claimant does not seek to relitigate the prior proceeding which found him entitled to medical benefits. The evidence is neither cumulative nor duplicative. Rather, the claimant has brought a new proceeding requiring different evidence for distinguishable benefits. *Stice* does not preclude review-reopening proceedings that place in issue the claimant's entitlement to separate benefits upon which there is no prior adjudication. Because there was no prior adjudication on the issue, nothing in the law or *Stice* would require the claimant to make a showing of a change of condition in order to reopen the proceedings. Insofar as it affirmed the commissioner's finding to the contrary, the district court erred.

B. In the 1985 review-reopening proceeding, the deputy commissioner ordered "further medical treatment" which could include "surgical excision and resuture of his carpal tunnel decompression scar." Neither party disputes the healing period benefits paid from the date of surgery. The only question is whether similar benefits should have been available before the surgery, during which time Dr. Pakiam ordered "conservative" treatment with the TENS unit. Citing only industrial commissioner reports, defendants contend that the claimant is not entitled to benefits simply because he received medical treatment.

Professor Larson discusses these arguments:

> The fact that some treatment is still necessary, such as physical therapy or drugs, does not necessarily rule out a finding that the condition has become stabilized, if the underlying condition causing the disability has become stable and if nothing further in the way of treatment will improve that condition. But, if treatment was given in the hope of improving the condition, the later discovery that no improvement resulted does not bar a finding that the healing period persisted throughout the process of treatment.

2 A. Larson, *The Law of Workmen's Compensation*, § 57.12(c), at 10–25 to –29 (1989).

The deputy commissioner in the 1985 proceeding *ordered* further treatment. Dr. Pakiam administered further treatment in the form of the TENS unit. The ordered treatment clearly was administered in anticipation of some significant improvement in condition. *See* Iowa Code § 85.34(1) (1985); 2 A. Larson, *supra*, § 57.12(c), at 10–27 to –29. We thus are persuaded that Hall was entitled to healing period benefits while he was undergoing the "conservative" treatment. Claimant is entitled to 21.143 weeks of compensation at $334.47 per week, or a total of $7,071.70 plus interest.

IV. In the 1985 proceeding the deputy commissioner determined that the permanent partial disability to Hall's hand was thirty-two percent. In the 1988 proceeding, the defendants proved a change of condition warranting a reduction to twenty percent. The defendants paid the permanent partial disability benefits in a lump sum after the 1985 proceeding. The defendants are entitled to a credit for their overpayment. *Wilson Food Corp. v. Cherry*, 315 N.W.2d 756, 757 (Iowa 1982); *Unified Concern for Children v. Caputo*, 320 N.W.2d 643, 644 (Iowa App.1982).

The hand is a scheduled member, the complete loss of which entitles the claimant to 190 weeks of compensation. Iowa Code § 85.34(2)(*l*). Defendants paid for the loss of thirty-two percent of Hall's hand, or 60.8 weeks at $334.47 per week, or a total of $20,335.78. After the second operation, it was established that defendants should have been obligated for only twenty percent of Hall's hand, or 38 weeks at $334.47 per week, or a total of $12,709.86. Defendants are entitled to a credit for overpayment of 22.8 weeks, or $7,625.92 plus interest.

V. We hold that the claimant was entitled to healing period benefits in the amount of $7,071.70 plus interest for the period of time during which he was undergoing conservative treatment. We also hold that defendants are entitled to a credit for overpayment of permanent partial disability benefits in the amount of $7,625.92 plus interest. The deputy industrial commissioner originally determined that neither party should take anything from the proceedings. Neither the industrial commissioner nor the district court addressed the issue. We see no reason to disturb it now. The decisions of the district court and the industrial commissioner are *reversed*. We remand to the industrial commissioner for further proceedings in accordance with this opinion.

Costs are taxed one-half to each party.

REVERSED AND REMANDED.

OXBERGER, C.J., concurs.

HABHAB, J., dissents.

HABHAB, Judge (dissenting).

I respectfully dissent. I would affirm the trial court.