Gary W. WARRELL,
Petitioner-Appellee,

v.

**IOWA DEPARTMENT OF JOB SER-
VICE and Armstrong Rubber Co.,
Respondents-Appellants.**

No. 83–824.

Court of Appeals of Iowa.

Sept. 6, 1984.

Walter F. Maley, Blair H. Dewey, and Edmund Schlak, Jr., Des Moines, for respondents-appellants.

Helen L. Stirling, Des Moines, for petitioner-appellee.

Heard by SNELL, P.J., and SCHLEGEL and SACKETT, JJ.

SNELL, Presiding Judge.

This case involves a question of entitlement to unemployment benefits. Claimant, Gary W. Warrell, was employed as a tire builder by Armstrong Rubber Company. He began employment in 1968 and was fired January 26, 1982. His last three years were marked by confrontations with the employer. On September 1, 1978, Warrell was suspended for three months and placed on probation for one year for "actions ... completely outside the realm of acceptable and prudent behavior," with reinstatement conditioned on counselling with a psychologist. On July 24, 1981, he was suspended for 7.5 days and placed on probation for one year for numerous and frequent violations, among which were "serious physical harm to an employee, threats of violence, intimidation, coercion, and many incidents of wasting time for various reasons." Warrell agreed to immediately comply with supervisors in matters of temporary transfer, reassignment, or pay status change, and if questions arose, to follow the grievance procedure in accordance with the collective bargaining agreement at a time deemed appropriate by the supervisors. It was expressly stated that any violations of the foregoing conditions of employment might result in discharge.

On October 6, 1981, Armstrong Rubber imposed a 5.8-day suspension and extended Warrell's probationary period to one year from that date in lieu of discharge. This suspension and extension of his probationary period resulted from Warrell's failure to comply with item 2 of the July 24, 1981, Memo of Understanding—Conditions of Employment, as well as intimidation of supervisors and other employees. Item 2 pertained to complying with supervisor's instructions. The October 6, 1981, memorandum of understanding was signed by Warrell and Armstrong Rubber officials. It stated that the extended period of probation was agreed to by the company for the sole purpose of demonstrating the company's going "the extra mile" in an intolerable situation.

The events leading to Warrell's discharge occurred on January 22, 1982. Warrell had worked about three hours at his machine producing 55 tires. His supervisor, David Kirkpatrick, told him at about 6:25 p.m. that his machine would be shut down and because he was the junior man he would be switched to machine 38 in a different department. As soon as Warrell arrived in the new department, he asked his new supervisor, Mr. Bolander, for permission to see the nurse because his foot hurt. His foot had a collapsed arch which had been aggravated by his bowling the night before. Warrell wanted to go home. The nurse told him she could not give him permission to go home but would speak to the foreman on his behalf. Both supervisors were informed of Warrell's complaint. His regular supervisor, Kirkpatrick, confirmed that his production seemed unaffected by any foot injury. Warrell was ordered by the supervisors to go to work. Shortly thereafter, the new supervisor, Bolander, called Kirkpatrick to tell him that Warrell wouldn't work and was sitting in the break area. Kirkpatrick and Harold Huddleston, a union official, proceeded to the break area where they found Warrell.

Warrell complained that his foot hurt, he was unable to build tires and wanted to go home. Kirkpatrick told Warrell he had checked his production to that point and found it was pretty decent. He then left so that Huddleston could talk privately with him. When he returned, Warrell was still maintaining that he couldn't work. Kirkpatrick then went to get a copy of the company rules and upon returning found Warrell, Bolander, and Huddleston at machine 38. Kirkpatrick addressed Warrell three times by name before his presence was acknowledged. Kirkpatrick then read Rule 25 aloud which provided that a failure to comply with reasonable instructions could result in discharge. This was the same rule that Warrell violated in October, 1981, which resulted in his one-year suspension being extended to another year from that date. Warrell began to take out his tools. As he was doing this he became very aggravated and began to tremble. He then turned to Kirkpatrick and said, "Get the fuck out of my sight," followed by, "Get the fuck out of my sight, please" (Warrell's version), or "Get out of my sight, you fucking son of a bitch" (Kirkpatrick's version). Kirkpatrick told Warrell to calm down. Warrell said he couldn't, told him to "get the fuck out of my sight" again, after which Kirkpatrick left. Warrell was allowed to finish his shift but was suspended the next day for violating the terms of his July 24, 1981, and October 6, 1981, probationary agreements.

The hearing officer of the Iowa Department of Job Service agreed with the claims deputy that Warrell was disqualified for unemployment benefits. He held that claimant was guilty of misconduct, citing section 96.5(2)(a), Iowa Code, and section 370–4.32(1), Iowa Administrative Code. The appeal board affirmed by a two to one vote. The district court reversed the agency decision, concluding that Warrell's vulgar language directed toward his supervisor was justified under the circumstances. At most, he was provoked into a single hot-headed incident. Citing *Budding v. Iowa Dept. of Job Service*, 337 N.W.2d 219 (Iowa Ct.App.1983), the district court con-

sidered Warrell's actions to be, at most, a peccadillo. The court viewed his vulgarity as an isolated incident in an environment where decorous language is not required and he did not refuse to obey a reasonable directive.

 Our review in this case and the district court's review of final agency action is at law, not de novo. *Green v. Iowa Dep't. of Job Service*, 299 N.W.2d 651, 655 (Iowa 1980). We review the agency's findings of fact and if the record contains substantial evidence to support those findings, we are bound thereby. *Gipson v. Iowa Dept. of Job Service*, 315 N.W.2d 834, 837 (Iowa Ct.App.1981). Evidence is substantial if a reasonable person would find it adequate for reaching a decision. *Id.* The fact that an agency could draw two inconsistent conclusions from the evidence presented does not mean that one of those conditions is unsupported by substantial evidence. *City of Davenport v. Pub. Emp. Rel. Bd.*, 264 N.W.2d 307, 311 (Iowa 1978).

Section 96.5(2)(a), Iowa Code, provides that an individual is disqualified for unemployment benefits if he is discharged for misconduct. The administrative rule defining misconduct has been found to reflect the legislative intent. *Huntoon v. Iowa Dept. of Job Service*, 275 N.W.2d 445, 448 (Iowa 1979). That rule, 370 I.A.C. § 4.32(96)(1)(a), provides:

> Misconduct is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards or behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree or recurrence as to manifest culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or

of the employee's duties and obligations to the employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

In determining that Warrell was not guilty of misconduct, the district court relied on *Budding v. Iowa Department of Job Service,* 337 N.W.2d 219 (Iowa Ct.App. 1983). By so doing, its analysis went awry. *Budding* involved an employee who was fired after receiving three warnings for misconduct. At the time, Budding was not on probation, nor had he been previously suspended. The case at bar is not the same. This is a case of probationary conduct. It is a case where the employee had been suspended three times, placed on probation three times, and was on probation when the final offensive conduct took place. To say that Warrell's actions were "a peccadillo" or that "decorous language is not required," effectively ignores the fact that Warrell was then a probationary employee and the employer had been down this same road with him several times before. Use of foul language can alone be a sufficient ground for a misconduct disqualification. *Zeches v. Iowa Dept. of Job Service,* 333 N.W.2d 735 (Iowa Ct.App.1983). But we do not view the vulgar language used by Warrell as solely determinative on the question of misconduct. Less yet do we find any meaningful difference between the employee's and employer's versions. What is significant is that Warrell and Armstrong Rubber had already agreed that the company was going the extra mile when it granted a probationary status to him. The conditions of employment were that supervisors' orders regarding temporary transfer or reassignment were to be immediately complied with. Instead of accepting these conditions, Warrell embarked on his own course of active resistance culminating in a blast of verbal abuse of his supervisor. Substantial evidence supports the agency's findings that this was "misconduct" in that it evidenced a willful or wanton disregard of an employer's interest or disregarded standards of behavior which the employer had a right to expect of employees.

Warrell had long since forfeited rights that a nonprobationary employee has. His grace period had been squandered, too. The district court erred in reversing the Job Service Appeal Board.

REVERSED AND REMANDED FOR ENTRY OF JUDGMENT.