TERRY J. CARROLL, Plaintiff-Appellant, v. BOARD OF REVIEW, ILLINOIS DEPARTMENT OF LABOR, *et al.*, Defendants-Appellees.

Second District   No. 84—0424

Opinion filed April 26, 1985.

Jerry Brask, of Prairie State Legal Services, Inc., of Geneva, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (William R. Wallin, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Terry J. Carroll, appeals from that part of the trial court's judgment affirming the decision of defendant, Board of Review, Illinois Department of Labor (the Board), which found plaintiff ineligible for unemployment insurance benefits on the basis that he was discharged by his former employer, defendant Musicland, for misconduct connected with his work. The sole issue raised by plaintiff on appeal is whether that part of the trial court's judgment was against the manifest weight of the evidence. Without filing a cross-appeal, the Board challenges the remaining part of the judgment which denied the Board recoupment of $465 in benefits previously paid to plaintiff.

Plaintiff was discharged from his position as assistant manager of a Musicland store in Dundee on May 4, 1982, and applied for unemployment insurance benefits. He received $465 in benefits for a three-week period before being declared ineligible by a claims adjudicator, who found plaintiff had been discharged for insubordination and poor work performance, and determined that plaintiff had received a prior warning about work performance and that there was detriment to the employer's interest.

Plaintiff appealed this determination, and a hearing was held before a referee. At that hearing, the referee reviewed plaintiff's written statement to the claims adjudicator, in which plaintiff stated that he was discharged by Sue Clark, the new store manager, because of poor work performance, that Clark said the store was a mess when she came in that morning, and that while there were LPs on the floor, that was the way plaintiff usually handled it when a shipment could not be finished.

Plaintiff then testified that he had been employed by the store for a year and a half, had been given no prior warnings, and had always been complimented before Clark arrived. Plaintiff stated that on Thursday, May 4, 1982, the day he was terminated, he came into work and immediately returned to the work that he had left Tuesday night. A short time later, Clark fired him, and he told her he worked "my tail off" that day and that she had to have an okay from a district manager to fire him. Clark told him to clock out three times before he went home. Plaintiff denied using any profanity, and said he told Clark, "I worked my tail off that day. I don't

need to hear this." Plaintiff admitted that Pete Smith, who had been a store manager sometime before Clark, had come up to him in January with a regular yellow sheet of paper and pointed out a couple of things that were wrong with the store, but plaintiff denied ever receiving a written or verbal evaluation with regard to work performance inadequacies. He had never received an evaluation that was less than satisfactory, was promoted to assistant manager two months after he started at Musicland, and was told no one ever became assistant manager within that length of time before.

Sue Clark stated that when she walked into the store that morning, she did not intend to discharge plaintiff. She said she came into the store to catch up on everything that had not been done from the day before, and that she "couldn't put up with this." She acknowledged that she was new in the store and plaintiff was not used to her style, but said when she told him about his job performance, plaintiff looked at her and said he "didn't need to hear this bullshit" from her. She then told him her first inclination was to fire him, to which he said, "If you're going to fire me, fire me." Clark then told him he was fired. She believed the content of his statement was insubordinate. Clark further stated that there was a prior written warning in January about job performance that was in plaintiff's personnel file.

Pete Smith identified the yellow legal-size piece of paper and stated that he prepared it. Smith said he talked to plaintiff several times about the points on the paper, verbally warning him, and came in on Saturday the 16th of January and the store was a total mess. Smith intended the paper to be a written warning, as he did not have the company forms.

Plaintiff admitted he saw the yellow paper, but said he made a 100% effort to resolve those matters and to correct his performance. Recounting the events on the day he was fired, plaintiff said Clark asked him to stop his work and told him the store was a mess and he was fired. Plaintiff told of times that he worked when he was ill, when he worked without pay, and when he worked alone on Good Friday when there should have been at least five people working. Plaintiff's brother testified that plaintiff enjoyed his work very much, worked long hours and through lunch, and that when he visited the store while plaintiff worked there, it was very clean and customers were treated very well.

Following the hearing, the referee concluded that plaintiff was discharged for misconduct connected with his work. In his written decision, the referee stated that it was undisputed that a verbal in-

terchange occurred in which plaintiff admitted he challenged the authority of the supervisor to issue a verbal reprimand concerning his work performance. While the referee found the language used was moderate, he concluded it was a clear rejection of a reasonable management directive, and was therefore insubordinate. The referee also decided that the benefits which had been paid to plaintiff may be recovered by way of recoupment.

Plaintiff appealed to the Board of Review, which, after examining the record, affirmed the decision of the referee. The Board found that the evidence was conflicting, but that the referee had the opportunity to observe the demeanor of both parties and that his decision was not contrary to the manifest weight of the evidence. On administrative review in the circuit court, the trial judge concluded that he could not, under the law, hold that the finding of the referee, affirmed by the Board, was against the manifest weight of the evidence but, upon finding that recoupment was not justified, reversed the order granting recoupment.

Plaintiff seeks reversal of the decisions of the agency and the trial court finding him ineligible for unemployment insurance benefits on the basis that the evidence indicates his actions did not constitute misconduct.

■ The Illinois Unemployment Insurance Act (the Act) establishes a compulsory unemployment insurance program for the benefit of those involuntarily unemployed. (Ill. Rev. Stat. 1981, ch. 48, par. 300; *Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 390, 472 N.E.2d 434.) Section 602(A) of the Act (Ill. Rev. Stat. 1981, ch. 48, par. 432) states: "An individual shall be ineligible for benefits for the week in which he has been discharged for misconduct connected with his work ***." Every justifiable discharge does not disqualify the discharged employee from receiving benefits under the Act. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 507.) While an employee's conduct may be such that the employer may properly discharge him, such conduct may not constitute "misconduct connected with his work" which disqualifies the employee from receiving unemployment benefits. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 507.) Thus, we must determine whether plaintiff's conduct constituted "misconduct" within the purview of the Act, making him ineligible for unemployment compensation.

■ ■ The hearing referee and the Board found that plaintiff's actions disqualified him from receiving unemployment benefits. We note that it is the decision of the Board, not the referee, which is reviewed by the courts. (*Gregory v. Bernardi* (1984), 125 Ill. App.

3d 376, 379, 465 N.E.2d 1052.) It is the function of the Board to determine the facts from all the evidence and circumstances. (125 Ill. App. 3d 376, 379, 465 N.E.2d 1052.) Agency findings and conclusions on questions of fact are held to be *prima facie* true and correct, and the sole function of the reviewing court is to determine whether the agency's decision is against the manifest weight of the evidence. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513; *Garland v. Department of Labor* (1984), 104 Ill. 2d 383, 392, 472 N.E.2d 434; *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391, 469 N.E.2d 1085.) If the issue is merely one of conflicting testimony and credibility of a witness, the agency's determination should be sustained. *Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 383, 465 N.E.2d 1052.

■ Here, the Board expressly found that the evidence was conflicting and, upon review of the record, upheld the decision of the referee, who had the opportunity to observe the demeanor of the parties, as not being contrary to the manifest weight of the evidence. We, too, find the evidence conflicting. Plaintiff's version of his actions leading to his discharge differs from the account of the incident given by Clark. Plaintiff denied using any profanity and denied ever receiving a prior warning about his work, while admitting that he had seen the yellow paper prepared by Smith with points about plaintiff's job performance. He said Clark told him to clock out three times, and admitted questioning Clark's ability to fire him without approval of a district manager, while denying that he ever questioned her authority. Clark, however, stated that plaintiff used profanity, that plaintiff had been given a prior warning about leaving the store in a mess, and that she did not intend to fire him and only did so after plaintiff used profanity and challenged her to do so. Based on this record, we conclude that, while the evidence was contradictory, the Board's finding affirming the decision of the referee that plaintiff was insubordinate was correct and not contrary to the manifest weight of the evidence.

■ Even though we agree with the Board's finding, we must decide whether it was correct in its determination of the legal effect of plaintiff's acts; *i.e.*, whether plaintiff's act of insubordination was sufficient to result in discharge for "misconduct connected with work." (See *Sheff v. Board of Review* (1984), 128 Ill. App. 3d 347, 351, 470 N.E.2d 1044.) Generally, insubordinate conduct by an employee disqualifies him for benefits. See Packard, *Unemployment Without Fault: Disqualifications for Unemployment Insurance Benefits*, 17 Vill. L. Rev. 635, 646 (1972); see also Annot., 26 A.L.R. 3d

1333 (1969).

Our supreme court recently addressed the issue of what acts of an employee will constitute such misconduct under the Act in the context of violation of a company rule, and held that it is not necessary to show harm or potential harm to the employer to establish misconduct. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 511.) The court cited with approval the following language, finding that this definition of disqualifying misconduct has gained acceptance:

> " '[T]he intended meaning of the term "misconduct" *** is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.' " *Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 511-12, citing *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259-60, 296 N.W. 636, 640. See generally Annot., 26 A.L.R.3d 1356 (1969).

■ Applying this definition to the facts in the present case, we believe that plaintiff's conduct constituted a serious and deliberate disregard of standards of behavior which Clark had a right to expect and a substantial disregard of Musicland's interests and of plaintiff's duties and obligations to Musicland. Plaintiff did not deny that he left the store in an unpresentable condition, and when Clark attempted to question plaintiff about this, plaintiff refused to listen and instead told Clark he "didn't need to hear this" and then challenged her authority to fire him. An employee has the duty to discuss with his supervisor complaints regarding his job performance. (See *Snodgrass v. Oxford Properties, Inc.* (Minn. App. 1984), 354 N.W.2d 79.) An employee's insubordinate refusal to discuss work performance and challenges to authority to fire him are in clear disregard of an employer's interest. See *Hines v. Department of Labor & Employment Security* (Fla. App. 1984), 455 So. 2d 1104, 1106-07.

In addition, abusive language is a form of insubordination which alone may be found to be disqualifying. (See *Strong v. Pennsylvania Unemployment Compensation Board of Review* (1983), 73 Pa. Commw. 554, 556-57, 459 A.2d 57, 59; *cf. Sheff v. Board of Review* (1984), 128 Ill. App. 3d 347, 351-52, 470 N.E.2d 1044, where raising

a voice and being argumentative to a supervisor in a private office without threatening or abusive language held not an act of insubordination sufficient for ineligibility due to misconduct.) While Clark stated that plaintiff used profanity, we agree with the referee's determination that plaintiff's language was "moderate" and would not, taken alone, constitute misconduct so as to disqualify him from receiving unemployment benefits. However, plaintiff's language is a factor to be considered and here reflects plaintiff's insubordinate attitude. On this record, we believe that the Board correctly determined that plaintiff's insubordinate behavior, although only a single incident, constituted misconduct as contemplated by the Act.

■■ The Board contends that the trial court was clearly wrong in determining that recoupment of benefits previously paid to plaintiff was unjustified and that although the Board did not appeal from this portion of the trial court's judgment, this court may still consider the issue and reverse the trial court on this point. The Board misperceives the authority of this court. Reviewing courts in this State refuse to consider complaints raised by an appellee in his brief concerning action taken by the circuit court when he has failed to file a cross-appeal from the circuit court's decision. (*Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 412, 462 N.E.2d 488.) The Board did not cross-appeal from that aspect of the trial court's order reversing the Board's decision granting recoupment of $465 in benefits previously paid to plaintiff, and that issue is not properly before this court. (*City of Chicago v. Industrial Com.* (1974), 59 Ill. 2d 284, 290, 319 N.E.2d 749.) Thus, having failed to appeal from that portion of the trial court's decision which the Board now seeks to contest, the Board is bound by the judgment below. See *Abdul-Karim v. First Federal Savings & Loan Association* (1984), 101 Ill. 2d 400, 412, 462 N.E.2d 488.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

NASH, P.J., and UNVERZAGT, J., concur.