Richard J. CARPENTER, Petitioner-Appellant,

v.

IOWA DEPARTMENT OF JOB SER-VICE and Schneider Metal Manufac-turing Company, Inc., Respondents-Appellees.

No. 86–422.

Court of Appeals of Iowa.

Dec. 23, 1986.

Blair H. Dewey, Walter F. Maley, and Joseph L. Bervid of the Iowa Department of Job Service, Des Moines, for respondent-appellee.

Heard by SNELL, P.J., and SCHLEGEL and HAYDEN, JJ.

HAYDEN, Judge.

The petitioner, Richard J. Carpenter, worked as an assembler at the employer's factory from April 30, 1979, until his discharge on January 22, 1985. His wife was also employed at this factory. Petitioner was discharged for using offensive language toward two supervisors on the day of termination.

The incidents which led to petitioner's discharge began on January 20, 1985, when the water pipes in petitioner's mobile home broke. That evening he called his wife's supervisor and requested that his wife be given the day of January 21, 1985, off so she could attend to the repair of the plumbing. The supervisor granted this request. Due to the nature of the pipe repair, petitioner reported to work on January 21, 1985, and asked to be given the day off so he could work on the water pipes. Again the request was granted. Petitioner failed to tell his supervisor that his wife had also been excused from work to attend to the broken pipes.

On the next morning, January 22, 1985, petitioner was confronted by his supervisor, who questioned him as to why he needed the day off when his wife already had taken the day off. As a result of this discussion petitioner told his supervisor "You can kiss my ass or fire me or whatever." On the same morning petitioner's wife was also confronted by her supervisor and asked why both she and her husband needed the day off. After this confrontation petitioner's wife began to cry and left her work station. Petitioner saw her and questioned her as to what had happened. Petitioner then went to explain the situation to his wife's supervisor, who told him that she did not want to hear about it. In response, petitioner said "I am going to tell you the same thing that I told Joe [his

Ronald J. Wagenaar of Legal Services Corporation, Mason City, for petitioner-appellant.

supervisor]. You guys can all kiss my ass." This statement was made within approximately half an hour after his initial remark. Two hours after this last act petitioner was discharged for insubordination.

Petitioner filed a claim for unemployment benefits which was denied in a claims deputy decision dated February 7, 1985. This decision was appealed by petitioner; a hearing was held on March 11, 1985. The hearing officer, in a decision dated March 15, 1985, concluded: petitioner's actions were a deliberate disregard of the standards which the employer has a right to expect; the conduct was contrary to and not in the best interest of the employer; and therefore amounted to disqualifying misconduct. Petitioner appealed to the appeal board, which on April 30, 1985, affirmed the hearing officer. He then filed a request for rehearing, which was denied on May 28, 1985. Having exhausted his administrative remedies, petitioner filed a petition for judicial review in the Cerro Gordo district court. In an order filed June 5, 1985, the court found misconduct and thereby affirmed the appeals board's decision.

Petitioner asserts there was insufficient evidence to support the agency's finding of misconduct. He asserts, in the alternative, as a matter of law, his use of vulgarity towards the two supervisors did not constitute disqualifying misconduct.

In cases arising out of the Iowa Administrative Procedure Act, our scope of review is limited to the correction of errors of law. Iowa Code § 17A.20 (1985); *Mary v. Iowa Department of Transportation*, 382 N.W.2d 128, 131 (Iowa 1986). When we review the decision of the district court, the issue with which we are concerned is whether the district court correctly applied the law. "In order to make that determination, this court applies the standard of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court." *Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429–30 (Iowa 1979).

Iowa Code section 17A.19(8)(f) provides that in a contested case the court shall grant relief from an agency action which is not supported by substantial evidence when that record is viewed as a whole. Evidence is substantial to support an agency's decision if a reasonable person would find it adequate to reach the given conclusion. *Meads v. Iowa Department of Social Services*, 366 N.W.2d 555, 558 (Iowa 1985). The possibility of drawing two inconsistent conclusions from the record does not prevent the agency's finding from being supported by substantial evidence. *Contract Services, Ltd. v. Iowa Department of Job Service*, 372 N.W.2d 212, 215–16 (Iowa 1985). Our sole task is to determine whether claimant is entitled to unemployment benefits. *Billingsley v. Iowa Department of Job Service*, 338 N.W.2d 538, 540 (Iowa Ct.App.1983). We do not challenge the employer's right to terminate claimant's employment.

A claimant is disqualified from unemployment benefits "[i]f the department finds the individual has been discharged for misconduct in connection with the individual's employment." Iowa Code § 96.5(2) (1985). The Iowa Code does not provide a definition of misconduct.

The Iowa Administrative Code defines "misconduct" as:

[A] deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, un-

satisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

370 I.A.C. § 4.32(1)(a) (language taken from *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). This definition reflects the intent of the legislature. *Huntoon v. Iowa Department of Job Service*, 275 N.W.2d 445, 447–48 (Iowa), *cert. denied*, 444 U.S. 852, 100 S.Ct. 105, 62 L.Ed.2d 68 (1979). The employer has the burden of proving misconduct. 370 I.A.C. § 4.32(4).

■ In order to establish misconduct the employer must prove conduct by the employee consisted of deliberate acts or omissions or evincing carelessness as to indicate a wrongful intent. *Billingsley*, 338 N.W.2d at 540. The focus of 370 Iowa Administrative Code section 4.32(1)(a) is on deliberate or intentional acts, or negligence of such a degree as to manifest equal culpability. *Holt v. Iowa Department of Job Service*, 318 N.W.2d 28, 29 (Iowa Ct.App. 1982). In *Jacobs v. California Unemployment Insurance Appeals Board*, 25 Cal. App.3d 1035, 1037, 102 Cal.Rptr. 364, 366 (1972), the Court said:

> The conduct may be harmful to employer's interests and justify the employees discharge; nevertheless, it evokes the disqualification for unemployment benefits only if it is willful, wanton or equally culpable.

There is no question that petitioner's actions were intentional; rather, this appeal questions whether as a matter of law and a matter of fact these actions constituted misconduct. The petitioner contends this case is very similar to *Budding v. Iowa Department of Job Service*, 337 N.W.2d 219 (Iowa Ct.App.1983). In *Budding* the claimant was discharged for receiving three class-two warnings in a twenty-six month period. Claimant, after receiving a reprimand, referred to his supervisor as a "dirty bitch." The court noted that claim-

ant's comment was not made in the course of argument, did not serve to undermine her authority, and was an isolated incident of relatively minor import. *Id.* at 223. We do not think the issue of petitioner's misconduct should be resolved this easily.

■ From *Budding* we adopt the following language:

> Even in a factory setting, where decorous language does not always prevail, repeated incidents of abusive language may amount to misconduct.

> \*   \*   \*   \*   \*   \*

> Where the use of vulgar language is an isolated incident in an environment where decorous language is not required, and is not occasioned by a deliberate refusal to obey a reasonable directive, we are inclined to view as a minor peccadillo.

*Id.* at 222. This court recognizes the principle that use of foul language, in and of itself, can be sufficient ground for a misconduct disqualification. *Warrell v. Iowa Department of Job Service*, 356 N.W.2d 587, 590 (Iowa Ct.App.1984). Along with these principles we consider any deliberate act evincing a willful and wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees is disqualifying misconduct.

■ The only testimony regarding the language used at employer's factory established that vulgar language was *occasionally* heard. Here petitioner was approached by his supervisor and asked to explain both his and his wife's absence on the prior date. Due to his frustration in trying to relate his reasons, petitioner told his supervisor "You can kiss my ass or fire me or whatever." If petitioner's acts had stopped at this point the *Budding* case arguably could be supportive. However, petitioner, upon seeing and visiting with his crying wife, went to his wife's supervisor and said "I am going to tell you the same thing I told Joe. You guys can all kiss my ass." Through this act, approximately thirty minutes after the initial confronta-

tion, petitioner elevated a possible minor peccadillo to an act of willful misconduct.

As a matter of law, employees are not expected to be entirely docile and well mannered at all times. *Budding*, 337 N.W.2d at 222. But, repeated incidents of abusive language directed at a supervisor may be misconduct. Also, abusive language which undermines the supervisor's authority, and therein evinces a willful disregard of the employer's interest, can be misconduct. Finally, we note, under the proper circumstances abusive language directed to a supervisor can be a form of insubordination which alone may be construed as disqualifying misconduct. *See Carroll v. Board of Review*, 132 Ill.App.3d 686, 692, 87 Ill.Dec. 674, 679, 477 N.E.2d 800, 805 (1985), and *Strong v. Commonwealth Unemployment Board of Review*, 73 Pa.Commw. 554, 556, 459 A.2d 57, 59 (1983).

The agency's decision is supported by substantial evidence and as a matter of law, petitioner's actions constituted misconduct. Viewing the record as a whole, we find sufficient evidence to support the agency's finding of misconduct. These acts did not amount to mere peccadillos, rather they were intentional utterances in deliberate disregard of a standard of behavior the employer has a right to expect, amounting to misconduct.

AFFIRMED.

SNELL, J., concurs.

SCHLEGEL, J., dissents.

SCHLEGEL, Judge (dissenting).

As a matter of law, the use of vulgar language in these circumstances was not misconduct.

We have held that in some circumstances the use of vulgarity and abusive language can amount to misconduct. *Budding v. Iowa Department of Job Service*, 337 N.W.2d 219, 222 (Iowa Ct.App.1983). We have provided criteria for determining if the use of vulgar language constitutes misconduct. *Budding* states that the use of vulgar language is not misconduct if:

1) The use of vulgar language is an isolated incident;

2) it occurs in an environment where decorous language is not required; and

3) it is not occasioned by a deliberate refusal to obey a reasonable directive. *Id.*

First, I am not convinced that this is more than an isolated instance. The incident arose out of the questioning of the employee and his wife by their respective supervisors concerning a day off taken by the husband and wife to fix plumbing in their home. Petitioner made two vulgar remarks. He told his supervisor "You can kiss my ass or fire me or whatever." He told his wife's supervisor, "I am going to tell you the same thing that I told Joe. You guys can all kiss my ass." I believe our language in *Budding* referring to isolated instances of vulgarity contemplates a repeated pattern of vulgarity in order to constitute misconduct, not two separate sentences emanating from the same incident. *See also* Annot. 92 A.L.R.3rd 106 (1979). The majority's distinction of this case from *Budding* on the basis of two "kiss my ass" comments separated by a short period of time and stemming from the same incident is, at the least, strained.

Second, the evidence established that such language was used in this environment. As in *Budding*, here swearing was heard in this factory at least occasionally.

Third, the vulgar language was not occasioned by a deliberate refusal to obey a reasonable directive. There was no deliberate refusal by the employee to obey a directive by the employer. Neither of the conversations between employee and employer were witnessed by anyone other than the participants.

In our cases dealing with vulgarity as disqualifying misconduct, we have either looked to the fact that customers or other employees overheard the questionable language, *see e.g. Zeches v. Iowa Department of Job Service*, 333 N.W.2d 735, 736 (Iowa Ct.App.1983), or we have looked to the fact that the vulgarity was accompanied with a refusal to obey supervisors, *see e.g. War-*

*rell v. Iowa Department of Job Service,* 356 N.W.2d 587, 589 (Iowa Ct.App.1984). *Budding's* examples of where vulgarity could amount to misconduct go directly to situations where the use of such language clearly impairs the operation of the essential functioning of the business or service. *Budding v. Iowa Department of Job Service,* 337 N.W.2d at 222.

Since the factors listed in *Budding* to determine misconduct were not met in this instance, I do not see how, as a matter of law, we can here say that the petitioner's conduct constituted misconduct.