Martin D. DEEVER,
Petitioner–Appellant,

v.

HAWKEYE WINDOW CLEANING,
INC., and Employment Appeal
Board, Respondents–Appellees.

No. 88–1479.

Court of Appeals of Iowa.

Aug. 23, 1989.

As Corrected Sept. 6, 1989.

Carolyn F. Coleman and David M. Keenan of Legal Aid Society of Polk County, Des Moines, for petitioner-appellant.

Blair H. Dewey and William C. Whitten, Des Moines, for respondent-appellee Employment Appeal Bd.

Michael M. Sellers of Dreher, Wilson, Simpson, Jensen, Sellers, Butters, Adams & Kaiser, P.C., Des Moines, for respondent-appellee Hawkeye.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ., but considered en banc.

DONIELSON, Presiding Judge.

Petitioner Martin D. Deever was employed as a window washer by Hawkeye Window Cleaning, Inc., in March 1987. On November 11, 1987, he asked to leave early to get a part for his car. Deever's foreman, Howard, gave him permission to leave. However, after Howard checked with the supervisor, Jim, this permission was denied. Howard informed Deever that Jim felt the employees were getting too pushy. Deever then stated that if Jim wanted to push they could go outside, "and we'll see if he wants his other fucking foot broke." Howard then told Jim about this statement. Later that day Jim asked Deever if he was going to break his other leg. Deever replied, "I guess so." Jim then told Deever he was fired.

Deever filed a claim for unemployment compensation. This was initially denied on the ground that he had been discharged for insubordination. Deever appealed this decision. After holding a hearing, the hearing officer found that Deever had been discharged for misconduct. The hearing officer found that Deever's response of "I guess so" to Jim's inquiry about Deever's earlier statement amounted to a repeated threat and vulgar language. The vulgar language was seen as a form of insubordination. Deever filed a petition for judicial review. The district court agreed with the agency and affirmed the decision. Deever now appeals the decision of the district court.

Our scope of review in cases arising out of the Iowa Administrative Procedure Act is limited under Iowa Code section 17A.20 to the correction of errors at law. *Foods, Inc. v. Iowa Civil Rights Commission*, 318 N.W.2d 162, 165 (Iowa 1982). The review function of the district court under section 17A.19 is to correct errors of law which are specified in section 17A.19(8). When we review decisions of the district court which were rendered in its capacity as an appellate body under section 17A.19, the issue for our determination is whether the district court correctly applied the law. *Budding v. Iowa Department of Job Service*, 337 N.W.2d 219, 221 (Iowa App.1983). In order to make that determination, we apply the standards of section 17A.19(8) to the agency action to determine whether this court's conclusions are the same as those of the district court. *Jackson County Public Hospital v. Public Employment Relations Board*, 280 N.W.2d 426, 429–30 (Iowa 1979).

Iowa Code section 96.5(2) provides that a claimant is disqualified from unemployment benefits "[i]f the department finds that the individual has been discharged for misconduct in connection with the individual's employment." The sole issue before us is whether the department erred in holding that petitioner's conduct constituted misconduct as that term is contemplated under section 96.5(2). We note at the outset that we do not question the employer's right to terminate petitioner's employment. The issue we address relates solely to whether or not petitioner is entitled to unemployment compensation.

■ Misconduct is defined by 345 Iowa Administrative Code 4.32(1) as:

A deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the

disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has a right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

As the definition suggests, in order to support a disqualification from unemployment benefits, the misconduct must be substantial. Misconduct serious enough to warrant the discharge of an employee is not necessarily serious enough to warrant a denial of benefits. *Budding*, 337 N.W.2d at 222.

■■■ This court has previously addressed the role of profanity in making misconduct determinations. In *Budding*, 337 N.W.2d at 222, this court held that where the use of vulgar language is an isolated incident in an environment where decorous language is not required, and it is not occasioned by a deliberate refusal to obey a reasonable directive, it is viewed as only a minor peccadillo and not as misconduct. Vulgar language in front of customers, however, can constitute misconduct, *Zeches v. Iowa Dept. of Job Service*, 333 N.W.2d 735, 736 (Iowa App.1983), as well as vulgarities accompanied with a refusal to obey supervisors. *Warrell v. Iowa Dept. of Job Service*, 356 N.W.2d 587, 589 (Iowa App.1984). Repetition of vulgarities can elevate a minor peccadillo to an act of willful misconduct. *Carpenter v. Iowa Dept. of Job Service*, 401 N.W.2d 242, 245–46 (Iowa App.1986).

At issue in this case are two statements made by Deever. Earlier in the workday Deever was informed by his foreman, Howard, that permission for him to leave early was withdrawn. Howard told Deever that the permission was withdrawn because Jim, the supervisor, felt the employees were getting too pushy. Deever then stated that if Jim, his supervisor, "wants to get that physical pushing we can go outside, and we'll see if he wants his other fucking foot broke." Later in the day, Deever returned from the worksite and was confronted by his supervisor. Jim asked Deever what work had been completed at the site and then said "so what's this about you're going to break my other leg?" Deever replied, "I guess so" and was then fired.

The decisions of the agency and of the district court seem to focus on the statement made by Deever at the end of the workday. The agency and the district court concluded that this latter statement would bring this case outside the parameters of *Budding*. Deever had been informed by Howard at the job site that his statement would be repeated to Jim, the supervisor. When Jim later confronted Deever, he said "so what's this about you're going to break my other leg." Jim was simply asking Deever to confirm whether he had made his earlier statement. Deever's response, "I guess so" was merely an affirmation of Jim's inquiry. Nothing in the record supports the view that this later statement of Deever's was a repeated threat or vulgarity or that it represented "an intentional act and that it would not be considered a minor peccadillo" as the agency and the trial court concluded. The agency and court erred in relying on this later statement to distinguish this case from *Budding*.

■■■ However, when the reason given by a district court for its adjudication is erroneous, the adjudication will nevertheless be sustained if a separate basis for doing so exists. Deever's statement at the job site amounts to more than a mere vulgarity. It encompassed the implicit threat to break his supervisor's foot. This threat-

ening nature distinguishes this case from *Budding* and the general principle that an isolated incident of vulgar language does not constitute misconduct. A threat constitutes a sufficient willful or wanton disregard of an employer's interest and of the standards of behavior which an employer has the right to expect of employees. Threatening one's employer constitutes misconduct and warrants a disqualification from unemployment benefits. Furthermore, Deever's vulgar and threatening statement was not merely made in the presence of his foreman, but was overheard by his two co-workers, Troy Jones and Bud Meyer. An isolated incident of vulgarity can constitute misconduct if it serves to undermine a superior's authority. *Carpenter*, 401 N.W.2d at 246; *Budding*, 337 N.W.2d at 223. Deever's language in this case would have had such an effect.

The decision denying Deever unemployment benefits based on his misconduct is affirmed.

AFFIRMED.

All Judges concur, except OXBERGER, C.J., and SCHLEGEL, J., who dissent.

SCHLEGEL, Judge (dissenting).

I respectfully dissent.

The majority has concluded that a separate basis exists to sustain the district court in that the language was intended as a threat. An isolated incident of vulgar language does not constitute misconduct. The majority's conclusion that the statement in question was a threat is not supported by the evidence. Employees are often angered by the actions of their superiors and will express this anger through vulgar language or threatening statements. When Deever spoke to the supervisor whom he had allegedly threatened, he offered no repeated threats or even angry words. Deever's statement was merely letting off steam and meant nothing more. The ruling of the trial court should be reversed.

OXBERGER, C.J., joins this dissent.